Ruffin, C. J.
 

 Susan Jones made her will on the 26th July 1846, and therein bequeathed as follows : “I am anxious to reward the meritorious services of the following named slaves with the boon of freedom, namely, Phillis, Esther, Nancy, Patsy, Scott, John, Amsy, Pleasant, For-tuna, Mary, West, and Sarah, and all their future increase and issue; and I direct my executors to apply a sum, not exceeding three hundred dollars, to pay their passage and settle said slaves in some one of the free States.” There are in the will a number of specific bequests to different persons, and a clause dividing the residue equally between four classes of persons. The testatrix died in the spring of 1848, and before her death one of the above mentioned women had a child born, named Pleasant, and since her death several others have been born.
 

 
 *67
 
 The bill is filled by the executors against the residuary-legatees and the Attorney General, and prays that the rights of the slaves and of the other parties, and the duties of the executors may be declared. It states, that the executors are willing and desirous to carry into execution the provision tor the emancipation of the slaves, by carrying them out of this State and settling them in one of the free States, into which it is lawful for them to go : but that they have been advised, that it is doubtful, whether they have a right to do so without having first had them emancipated in this State: and that they are willing to procure their emancipation here, and give
 
 the
 
 bonds required by our law, provided they may be allowed to retain the estate of the testatrix in their hands, as an indemnity against loss by reason of such bonds, but that, otherwise,, they are not willing unless compelled by law to do so. The bill states, that, in corn-sequence of the delay in procuring the emancipation, by reason-of doubts upon those points, the residuary legatees claim that the disposition for emancipation hath become void or that it was so from the beginning, and insist on the immediate distribution of the residue according to the will, and that the slaves and the said sum o.f $300 fall into and form parts of the residue, and more especially the slaves born since the date of the will. The answers do not present any other facts, but merely raise-the points of law presented on the will.
 

 There is no difficulty in saying, that the executors cannot apply to the purpose of effecting the emancipation of the slaves more than the sum specified in the will: and, by consequence that they cannot retain more of the estate on that account. The children born since the dealh of the testatrix are within the words of the will, as expressly as those named. With respect to one born between the making of 'the will and the death of the testatrix, the rule is not so
 
 *68
 
 clear.- Were it a disposition by way of legacy to some other person, the Court would feel bound by previous adjudications to hold, that the child did not pass to the donee of the mother. But the conclusion is to the contrary, on the direction to emancipate “ the issue and increase of a female,” who is emancipated by name in the will. “ Increase” is admitted in the cases to be
 
 per se
 
 an equivocal term : and, therefore, it is allowed, that other things in the will may be looked to, in order to give it a meaniug effectuating the actual intention. The supposition is almost inconceivable, that one should intend, that a child born, at any time after ■the will, should remain in servitude, when by the will not only the mother, but her issue and increase, are to be emancipated : or that the intention should not have been direct■ly the reverse — that such child should follow the mother and be free also. The purpose of the testatrix plainly denotes, as it seems to the Court, that “ issue and increase” was meant to include all born after the making of the will.
 

 The point respecting the mode of emancipation has been considered in the case of
 
 Thompson
 
 v.
 
 Newlin
 
 at this term, and the views of the Court so fully explained as to leave but little to be said on it now. If application be made to a Court of North Carolina to direct emancipation, it must, as a matter of course, be done in conformity with the particular provisions of our Statute on that subject. But this is not the Court for (Emancipation, but only the Court of construction, in which the will is expounded, and the performance of its trusts enforced. In that character the Court must declare, that the trust to carry the slaves out of the Slate for the purpose ol being settled in a free State, as free persons, is a lawful and valid trust, and that the plaintiff's, having undertaken the office of executors, are bound to execute this, as well as any other, trust of the will. If, therefore, the emancipation could be effected only by pursuing
 
 *69
 
 ihe mode designated in our statute, it would follow, that the executors would be obliged to resort :to that mode, and the Court would also be obliged to e.nforce them to do so. Bufs as emancipation may, in the opinion of the Court, be effected, without violating our law or policy, by transporting the slaves and their settling
 
 bona fide
 
 in a state of freedom in another country or State, the Court is bound to declaré, that the executors have an option, as to which oí the two modes they will adopt to execute the ttust. In the one mode or the other it must be executed, and therefore the next of kin or residuary legatees of the testatrix have no interest in the slaves or the fund set apart for them, or rather so much of it as may be needed for .the purpose mentioned, which, from the amount, must, we suppose, be the whole.-
 

 Pbr Curiam. Declared accordingly.